UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID ROMULUS, CASSANDRA BEALE, NICHOLAS HARRIS, ASHLEY HILARIO, and ROBERT BOURASSA, on behalf of themselves and all other persons similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>CVS PHARMACY, INC. and CVS CAREMARK CORPORATION<br><br>        Defendants. | C.A. No. 11-cv-11734-RWZ |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO REMAND**

**I.    Introduction, Procedural History, and Factual Background**

Plaintiffs filed an amended complaint in Suffolk County Superior Court against the Defendants CVS Pharmacy, Inc. and CVS Caremark Corporation (collectively "CVS") on August 31, 2011.  *See* First Amended Class Action Complaint Attached to Notice of Removal ("Complaint"), Docket No. 1.  Plaintiffs were Shift Supervisors who worked for CVS in Massachusetts.  Complaint, ¶1.  Plaintiffs alleged that CVS had required them, and all other Massachusetts Shift Supervisors, to stay in the stores during certain meal breaks without pay in violation of Massachusetts law.  *Id.* ¶¶2, 17-20.  Plaintiffs seek to recover the wages that they are owed for the time that they were required to stay in the stores during the unpaid breaks.  *Id.* (Counts I and II).

CVS removed this case to this Court on September 30, 2011 contending that jurisdiction is established pursuant to Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d).  *See* Docket

No. 1. CAFA jurisdiction requires, among other things, an amount in controversy exceeding $5,000,000, exclusive of interests and costs. *See* 28 U.S.C. 1332(d)(2)(A). Plaintiffs hereby move to remand this action on the grounds that CVS has failed to meet its burden to demonstrate that the amount in controversy has met the jurisdictional threshold. Specifically, Plaintiffs contend that CVS used assumptions about the number of putative class members who missed meal breaks and the frequency with which those meal breaks were missed that are based entirely on speculation, and are certainly in no way related to the allegations in the Complaint. Specifically, CVS assumes that 500 Shift Supervisors missed 5 meal breaks every single week of the relevant period without ever explaining the basis for choosing either of those numbers. Notice of Removal, Docket No. 1, ¶20. CVS offers *absolutely no evidence* in support of these assumptions. That is plainly insufficient.

The complaint was quite specific that there were two discrete sets of circumstances when Plaintiffs were required to stay in the stores on break, and were therefore not fully relieved from duty: (1) when there was no other managerial employee in the store with them who could perform certain tasks in their absence, such as authorizing certain returns of merchandise; and, (2) when there was only one other employee in the store at the time of the break. Complaint, ¶¶2, 17-20. In other words, Plaintiffs did not allege that CVS always required that Shift Supervisors stay in the stores during their meal breaks, but only under these specific circumstances. Plaintiffs obviously do not have access to the time records of either the Massachusetts Shift Supervisors in the putative class or the other employees who were in the stores with the Shift Supervisors during their breaks. Without such information, Plaintiffs are unable to determine how many breaks were "taken" by Shift Supervisors in the two discrete sets of circumstances at issue here.

Unlike Plaintiffs, CVS *could* and *should* have performed an analysis that conformed to the allegations in the complaint by counting the number of meal breaks during which Shift Supervisors either: (1) were in the stores without another managerial employee on duty; or, (2) were in the stores with only one other employee on duty. Its refusal to do so was no doubt strategic. Complaint, ¶2, 17-20. Should Plaintiffs prevail on liability, CVS will of course argue that the number of meal breaks at issue here is far less than the unsubstantiated assumptions it has presented in support of its removal effort. And having put forth *absolutely no evidence* of the actual number of meal breaks at issue, CVS would be free to recant these speculative assumptions later in the litigation when they are no longer so convenient. CVS should not be permitted to have it both ways – it should either show that it is reasonably probable that over $5,000,000 is genuinely at stake or it should litigate this action in state court. CAFA jurisdiction requires a showing of reasonable probability that the amount of controversy has been met, not conveniently chosen assumptions designed to reach the jurisdictional threshold.

During the meet and confer process prior to the filing of this motion, counsel for CVS indicated it was unwilling to perform such an analysis. Notably, CVS did not perform such an analysis of even a sample of its stores and explain how the results of such an analysis could be *reliably* extrapolated to the entire population of the stores. As numerous courts have held in the context of wage and hour class actions, an employer cannot establish CAFA jurisdiction through purely speculative assumptions about the amount in controversy, particularly where evidence was available to the employer that it could have used to meet its burden. Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs' motion to remand this action to state court as explained further herein.

## II. Argument

### A. It Is CVS' Burden To Establish CAFA Jurisdiction

In order to avoid remand, CVS bears the burden of demonstrating that there is a "reasonable probability that over $5 million is at stake in this case." *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 50 (1st Cir. 2009). In evaluating whether CVS has met its burden the Court "may consider which party has better access to the relevant information." *Id.* at 51 (citations omitted). For example, in *Amoche*, the First Circuit remanded the action in part because it "consider[ed] what information reasonably [was] within [defendant's] control [that] it failed to present" to the Court. *Id.* at 52. Specifically, the Court noted that among the reasons the removing defendant failed to meet its burden was that it did not even provide a statistical analysis of a sample of the potential class members to determine the amount in controversy. *Id.* The First Circuit also observed that it could not merely take the estimated damages of the named plaintiffs and assume that all other class members suffered damages in similar amounts. *Id.*

### B. CVS Failed To Meet Its Burden Because It Used Speculative Assumptions That Do Not Conform To The Specific Allegations In The Complaint

The United States Court of Appeals for the Fourth Circuit has specifically rejected the type of showing CVS makes here in order to establish CAFA jurisdiction in a wage and hour class action. In *Bartinikowski v. NVR, Inc.*, 307 Fed.Appx. 730, 2009 WL 106378 (4th Cir. 2009) (unpublished) (cited by the First Circuit in *Amoche*, 556 F.3d at 50 n.4), the defendant employer removed a case in which a class of employees were seeking to recover unpaid overtime wages. In seeking removal, the employer submitted a calculation of the amount in controversy that exceeded $5 million dollars. *Id.* at 733. That calculation assumed that each employee worked 5 hours of overtime per week. *Id.* The Fourth Circuit could not have rejected this approach to establishing the amount of controversy more unequivocally:

4

Case 1:11-cv-11734-RWZ Document 7 Filed 10/20/11 Page 5 of 9

> [The employer's] ultimate estimate of the amount in controversy, however, is fatally undermined by the wholly unsupported assumption on which its calculations ultimately rest – that Plaintiffs and class members will each claim to have worked an average of five hours of overtime per week. … [The employer does not have] license to pull numbers out of thin air in determining the amount in controversy. … [I]ts 'five hours of overtime per week' estimate is not evidence; it is an assumption. … Nor is it an assumption that finds some support in the record; at this point, it seems the 'five hours of overtime per week' was nothing more than the result of some strategic guesswork on [the employer's] part, and Plaintiffs are under no obligation to rebut this bare assertion. [The employer's] estimate of overtime hours is pure guesswork, and leaves significant uncertainty about the actual amount in controversy.

*Id.* at 735-738.[1]

It should be emphasized that in *Bartinikowski* the employer did not possess any time records of the employees' overtime hours, and thus there was no documentary evidence available that would establish how many hours were at issue in the case. *Bartinikowski*, 307 Fed.Appx. at 735. By contrast here, CVS has access to time records of employees that could be used to determine how many meal breaks were "taken" by Shift Supervisors when they were: (1) on duty with no other managerial employees; or (2) when they were in the stores with only one other employee. *See* Complaint, ¶2, 17-20.[2]

---

[1] CVS had also suggested that Plaintiffs' entitlement to attorneys' fees could push the amount in controversy over the jurisdictional threshold. Notice of Removal, Docket 1, ¶21. The Fourth Circuit the very same speculative attorney's fees argument as well. *Id.* at 736, n.12 ("At this stage of the litigation, however, an estimate of attorneys' fees is pure speculation, and thus, on this record, cannot be used to augment the amount-in-controversy calculation."); *see also Smith v. Brinker Int'l, Inc.*, No. 10-0213, 2010 WL 1838726 at *5 (N.D.Cal. May 5, 2010)("Defendants do not offer any estimate or calculation of fees which plaintiffs may seek, and the court declines to speculate as to the amount of fees."); *Guerrero v. R.R. Donnelley & Sons Co.*, No. 10-CV-00776-PA-AGR (C.D. Cal. July 26, 2010) (Docket No. 21 at 4) ("However, Defendant has not suggested what the fee might be, nor has it provided any evidence to suggest the appropriate amount of attorneys' fees. In the absence of any evidence or argument as to what attorneys' fees should be, the Court refuses to speculate.").

[2] Plaintiffs obviously lack the requisite information to perform the correct analysis at this time (discovery has not yet commenced), but that has no bearing on the resolution of the motion to remand. *Id.* at 737 ("Plaintiffs have no burden in these circumstances and are under no obligation to put forth any evidence.") (citations omitted). Moreover, Plaintiffs' own recollections as to how often this occurred in their own personal experience is a poor substitute for CVS' employment records. In addition, their

5

It should also be noted that the Fourth Circuit is hardly an outlier on this issue. Numerous federal courts have declined to find jurisdiction under CAFA when the employer has relied upon unsubstantiated assumptions – in lieu of actual evidence – to calculate the amount in controversy in a wage and hour class action:

(1) *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 1002 (9th Cir. 2007) (rejecting unsubstantiated assumptions concerning, *inter alia*, the number of employees subject to the illegal policy and noting that "[i]f Defendant, who is the only party with access to its employment records cannot more accurately approximate the class size, Plaintiff cannot be expected to plead her case with any more specificity than she did.").

(2) *Ruby v. State Farm Gen. Ins. Co.*, No. 10-02252, 2010 WL 3069333 at *4 (N.D.Cal. Aug. 4, 2010) ("Based on the allegations in the complaint, there is no basis for assuming that every employee missed a meal period and a rest period every workweek during the entire class period. The allegations state only that the putative class members missed some breaks, without providing any frequency.").

(3) *Nolan v. Kayo Oil Co.*, No. 11-00707, 2011 WL 2650973 at *4 (N.D.Cal. July 6, 2011) ("Simply assuming that every employee missed 5 meal breaks a week for the entire class period or that every employee worked at least one hour of overtime a week, without some facts or evidence to support these assumptions, is insufficient to meet Defendant's evidentiary burden.").

(4) *Roth v. Comerica Bank*, __F.Supp.2d__ , No. 10-03818, 2010 WL 6982510 at *7-16 (C.D.Cal. Aug. 31, 2010)(rejecting employer's assumption of the number of breaks missed, overtime hours worked, weeks in which the employees were underpaid and received inaccurate wage statements, and the number of days that employer withheld payment of wages; noting that "[i]n support of their notice of removal, defendants could have proffered evidence regarding [their] actual policies or practices…[t]hey could have conducted a sampling or other analysis demonstrating that it was more likely than not that many of their employees regularly worked [overtime]…[but instead they] failed to proffer evidence supporting their calculations regarding the amount in controversy.").

---

personal experiences cannot be assumed to be identical to that of all other Shift Supervisors. *See Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 52 (1st Cir. 2009) (refusing to assume named plaintiffs' experiences were the same as putative class members for purposes of establishing amount in controversy); *Martinez v. Morgan Stanley & Co.*, 2010 WL 3123175 at *5 (S.D.Cal. Aug. 9, 2010) ("Although Plaintiff alleged that her claims are typical of the class as a whole … and that class members consistently worked overtime…, this does not provide a basis to assume that every class member worked any particular number of overtime hours, much less that he or she worked the same number of overtime hours every workday as Plaintiff did on an unspecified occasion.").

(5)   *Smith v. Brinker Int'l, Inc.*, No. 10-0213, 2010 WL 1838726 at *5 (N.D.Cal. May 5, 2010) (rejecting defendants' "calculation of damages for alleged overtime and missed meal and rest periods [as] speculative and based on conjecture[.]").

(6)   *Verner v. Swiss II, LLC*, No. 09-5701, 2010 WL 99084 at *3 (C.D.Cal. Jan. 6, 2010)("Nothing in the First Amended Complaint or the Notice of Removal supports a conclusion that the amount in controversy is three [missed breaks] for each day worked for the last four years. Defendant has no 'summary-judgment type evidence' to support its calculation of the amount in controversy for the unpaid meal and rest breaks.").

(7)   *Guerrero v. R.R. Donnelley & Sons Co.*, No. 10-CV-00776-PA-AGR (C.D. Cal. July 26, 2010) (Docket No. 21 at 3) ("Defendant's assumptions about the extent of Defendant's violations and the number of times that each class member experienced a violation are not supported by any allegations in the Complaint or any … evidence.").

(8)   *Ellis v. Pacific Bell Telephone Co.*, No. 10-01141, 2011 WL 499390 (C.D.Cal. Feb. 10, 2011) (rejecting employer's assumption of unpaid overtime hours noting that employer appeared "to have 'arrived at [its] 3.74 hour figure not based on any evidence of actual hours worked by potential class members or any allegation made by Plaintiffs, but merely … to arrive at $5,0000,000.'") (citations omitted).

(9)   *Dupre v. General Motors*, No. 10-00955, 2010 WL 3447082 at *3 (C.D.Cal. Aug. 27, 2010) (rejecting employer's assumption that each class member missed one meal period per day given lack of evidence to support such an assumption).

(10)  *Martinez v. Morgan Stanley & Co.*, No. 09-2937, 2010 WL 3123175 at *5-6 (S.D.Cal. Aug. 9, 2010) (rejecting employer's assumptions concerning the number of class members who worked overtime, the number of overtime hours worked, the frequency with which class members missed meal breaks, the number of days class members waited for payment of wages upon termination, and the number of inaccurate wage estimates issued to class members).

(11)  *Pereira v. Gate Gourmet, Inc.*, No. 08-07469, 2008 WL 5158855 at *4 (C.D.Cal. Dec. 8, 2008) (rejecting employer's assumption that daily waiting time penalties for late payment of wages were applicable for maximum 30 day period resulting in highest possible penalty award).

Thus, it cannot be disputed that CVS' use of unsubstantiated assumptions to establish the amount in controversy has been squarely rejected by the federal courts. In most of those cases, it should be noted that there were often no records that could definitively establish the number of employees affected by the illegal policy, and the frequency with which the violations occurred. That is simply not the case here. Plaintiffs allege that the violations occurred in two discrete sets

of circumstances only, and the persons affected and the frequency with which the violations occurred can be determined by examining CVS' employment records to determine who else was on duty with the Shift Supervisors during their breaks. At a minimum, CVS obviously has ready access to information concerning how frequently these circumstances are currently occurring in each of its stores, yet does not even provide that information in support of removal.

Instead, CVS merely assumes that there are 500 shift supervisors who have worked in such circumstances each and every week of the relevant period, and that those circumstances arose 5 times per week for all of them. Those assumptions are pulled entirely out of thin air – just as in *Bartinikowski* and the other cases cited herein. Under these circumstances, it would be especially inappropriate to allow CVS to insert unsubstantiated figures into its amount-in-controversy calculation as it would "improperly shift the burden to plaintiff[s] to refute speculative assertions of jurisdiction and establish that there is no jurisdiction." *Roth*, 2010 WL 6982510 at *15. Such a reversal of the burden is contrary to First Circuit jurisprudence.

### III. Conclusion

For the reasons stated herein, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to remand.

Dated:  October 20, 2011                    Respectfully submitted,

                                            **/s/ Todd S. Heyman**
                                            Todd S. Heyman (BBO # 643804)
                                            Adam M. Stewart (BBO# 661090)
                                            SHAPIRO HABER & URMY LLP
                                            53 State Street, 13th Floor
                                            Boston, MA 02109
                                            Telephone: (617) 439-3939
                                            Facsimile: (617) 439-0134
                                            theyman@shulaw.com
                                            astewart@shulaw.com

                                            Philip J. Gordon (BBO#630989)
                                            GORDON LAW GROUP, LLP
                                            585 Boylston Street
                                            Boston, MA 02116
                                            Telephone:  (617) 536-1800
                                            Facsimile:   (617) 536-1802
                                            pgordon@gordonllp.com

                                            *Counsel for Plaintiffs and the Class*

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 20, 2011.

                            **/s/ Todd S. Heyman**
                                Todd S. Heyman